ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

JUDGE ANDERSEN

JOHN P. WALLISER, Plaintiff )

v. ) **00C 5679**

)

RODNEY SLATER, Secretary United States Department ) MAGISTRATE JUDGE ROSEMOND
Of Transportation, KIRK BROWN, Secretary Illinois )
Department of Transportation, THOMAS CUCULICH, )
Chairman Illinois State Toll Highway Authority, )
JAMES RYAN, Attorney General of Illinois, Defendants )

DOCKETED SEP 19 2000

FILED-ED4 00 SEP 15 PM 12:03 U.S. DISTRICT COURT

**COMPLAINT**

NOW COMES John P. Walliser, plaintiff in the above cited cause and complains of the Defendants as follows:

The action arises under 40 CFR Sec. 1502 (g), 42 USC § 108 (2)(E), The National Environmental Policy Act(NEPA), 42 USC § 4630, 28 USC § 1332, 11USC § 523, and the Fourteenth Amendment to the U.S. Constitution. The plaintiff has been granted jurisdiction under NEPA in the previous litigation Sierra Club ET. Al. vs. Kirk Brown ET.AL.No.96 C 4768. The plaintiff has jurisdiction under 11USC § 523 by order of the Federal Court No. 96B14083.

**COUNT I**
**Violation of due process**

**A. Wrongful denial of a pre-deprivation hearing right**

NOW COMES the plaintiff and complains of the State Defendants as follows;

1. On Sept 11,1990, Representatives of the Illinois Department of Transportation (IDOT), met with the plaintiff, John Walliser in his home. IDOT officials informed the plaintiff that his home was in the right of way for the proposed Federal Aid Highway currently known as I-355. IDOT officials delivered an "initiation of negotiation letter" to the plaintiff. The "initiation of negotiation letter advised the plaintiff that "under no circumstances would he be removed from his home without the provision of a comparable replacement dwelling". The letter also stated that should the plaintiff be dissatisfied with the treatment of his entitlements that he would have the right of judicial review in State and or Federal Court. A copy of the official letter is contained herein as (Exhibit A).

1

2. IDOT officials prepared a project relocation plan and submitted the plan to the Federal Highway Administration. The plan listed the Plaintiff's family by name as the first persons to be displaced by the project. The plaintiff had acquired property nearby and was seeking to relocate to the site that he had purchased.

3. The Will County Board denied the plaintiff local approvals for his intended relocation. The County Board based their denial upon IDOT officials who appeared before local zoning boards and requested that no building or zoning permits be issued in order to preserve a corridor for their highway. IDOT officials continued to change locations for the project because they had never engaged in proper environmental studies prior to the acquisition of properties for the project. The plaintiff's denial was based upon IDOT's change of right of way and the decision of the County Board was confirmed by written findings of the Chief Executive Officer of Will County.

4. The plaintiff requested assistance from IDOT officials to assist in a new relocation plan but was denied without reason. The plaintiff requested a hearing as promised in the "initiation of negotiation letter" but was ignored and denied. The State's "Displaced Person Act" 310 ILCS 40/5 adopted the Administrative Review Act as the exclusive jurisdiction to review the plaintiff's claims. IDOT officials refused to recognize the plaintiff's requests for an administrative hearing under the statute.

5. IDOT officials through the office of the Attorney General of Illinois ignored the request of the plaintiff for an administrative review and filed a restrictive proceeding of Forcible Entry and Detainer against the plaintiff. IDOT officials testified at trial that IDOT had violated numerous provisions of the State's relocation act regulations, had not provided comparable replacement dwellings, and had no authority to displace the plaintiff. IDOT officials also admitted at trial that IDOT was not complying with the State law pertaining to acquisitions of property for future highway purposes. The trial judge ruled that a limited statutory proceeding of Forcible Entry and Detainer had no jurisdiction to consider agency relocation violations, or violations of acquisition laws as a defense and that the proceedings could only adjudicate the rights to possession under the terms of a lease.

6. The plaintiff filed an appeal of the decision of the Circuit Court. The Appellate Court affirmed and ruled that Relocation Act violations were nothing more than claims for monetary benefits and could not be determined within a limited proceeding of Forcible Entry and Detainer. IDOT v. Walliser 629 N.E.2d 1189 at 1194,1195.

7. The "State Displaced Person Act" assures the displaced person to advance payments in order to avoid or reduce hardship and preserves the right of a hearing by an agency and the right of judicial review. The relevant provisions of the State Statute are as follows; 310 ILCS 40/4(a)

(2) That a displaced person who makes proper application for a payment authorized for such person by this Act shall be paid promptly after a move or, *in hardship cases, be paid in advance*; and [emphasis added]

(3) That any person aggrieved by a determination as to eligibility for a payment authorized by this Act, or the amount of a payment, may have his application reviewed by the State agency.

40/5. Review under Administrative Review Law
*The provisions of the Administrative Review Law and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of the final administrative decision of the State agency hereunder.* The term "administrative decision" is defined as in Section 3-101 of the Code of Civil Procedure. [Emphasis added]

8. The Attorney General's Office in Court pleadings advised the Appellate Court that Illinois had never adopted the Administrative Review Act to review the plaintiff's claims for relocation assistance and benefits. Without proper statutory jurisdiction the court issued an order that deprived the plaintiff of rights and entitlements without a hearing as prescribed by law. The Appellate Court never provided the plaintiff with the right to a hearing to determine what hardship would be created by an eviction without the provision of comparable replacement housing and relocation assistance and benefits.

9. The plaintiff lost his home, business, credit and savings without a hearing of his entitlements and was deprived of due process of law based upon misrepresentations concerning the rights of "Displaced Persons". The Attorney General's Office misrepresented to the Court the proper jurisdictional controlling authority to determine the Plaintiff's rights.

**B. wrongful denial of a post-deprivation hearing right**

10. The plaintiff provided a letter to the Governor's office advising of the fraud that had been perpetrated upon the plaintiff and the Courts. The plaintiff also complained of the unlawful acquisitions of property admitted to at trial. The Secretary of IDOT responded to the plaintiff's letter and stated that his eviction was still ongoing. The letter also affirmed the plaintiff's status as a "displaced person". The letter assured the plaintiff that he would receive relocation assistance and benefits. A copy of the letter is attached hereto as (Exhibit B).

11. IDOT officials hired an outside consultant to provide the plaintiff with an administrative hearing, which he had requested 4 years earlier. However, Al Bryck the head of land acquisition for IDOT, and the Attorney General's Office acted to obstruct the plaintiff's right to a hearing. Mr.Gary Griffen A.A.G. threatened the attorney for the plaintiff, by advising him that his law license would be suspended if he persisted in seeking the plaintiff's right to a hearing as a result of the letter issued by Kirk Brown. The letter was issued after the judgment of the court and affirmed the rights of the plaintiff as a "displaced person". The Attorney General's office proceeded to enforce the eviction against the plaintiff's family in order to obstruct the right to a full and fair hearing. The plaintiff pleaded with Mr. Bryk of IDOT to provide a storage facility for the plaintiff's possessions. Mr. Bryck stated that it was his intent and desire to see the

plaintiff's possessions thrown into the street within 24 hours. Mr. Bryk also informed the plaintiff that his family and business would receive no relocation assistance or benefits. Mr. Michael Volk who was hired by IDOT to provide a preliminary administrative hearing sent a letter to IDOT informing IDOT that the plaintiff could not proceed with the administrative hearing because the plaintiff was too busy being evicted. A copy of the letter is attached hereto as (Exhibit C).

12. The plaintiff and his family under threat of eviction without notice, moved into a small nearby rental dwelling and put as much of their possessions as possible into the homes of other family members. The plaintiff left his business equipment as there was no where else to store it. Thereafter, the State's Attorney of Will County in consultation with the State's Attorney of Cook County refused to enforce the order of the court. The Attorney Generals Office filed a new identical eviction proceeding against the plaintiff. IDOT v. Walliser 96 FE 1850. The plaintiff's relocation property had by this time been sold in foreclosure and the judgment secured by IDOT forced the plaintiff to file for Bankruptcy protection in lieu of relocation assistance and benefits. The order of the Federal Bankruptcy court No. 96B14083 was issued on October 18,1996.

13. The plaintiff was the president and founding member of the South Corridor Against the Tollway. As a result of the Plaintiff's community activities the plaintiff discovered that no families were receiving relocation assistance and benefits for this project. As a result of the Plaintiff's efforts the General Assembly held special hearings where it was found that persons displaced by the project were suffering great hardship without assistance or benefits. At that hearing the plaintiff confronted Kirk Brown the Secretary of IDOT concerning the denial of the plaintiff's right to a hearing. Mr. Brown responded that, "it would make no difference if the plaintiff received a hearing because he would make the final determination that the plaintiff was treated fairly". The plaintiff has never and will never receive a full or fair hearing as required by the State's Displaced Person Act. The plaintiff has been denied a hearing as required by law. This conduct has wrongfully denied to the plaintiff the rights and entitlements as contained in 310 ILCS 40/1 through 40/5 and the State's implementing regulations contained in The Illinois Administrative Code Title 92 Ch.I, Sub. Ch. F Section 518. The denial of a hearing as required by law is a violation of the plaintiff's right to due process under the Fourteenth Amendment to the U.S. Constitution.

WHEREFORE with no other remedy under State law the plaintiff prays this Honorable Court to issue an order finding that

A. The State Defendants have failed to provide the plaintiff with his right to a full and fair hearing as required by 310 ILCS 40/4 and 40/5.

B. That the plaintiff be awarded damages as determined by the court for the wrongful denial of relocation assistance and benefits as required pursuant to 310 ILCS 40/1 Et Seq. and the State's implementing regulations.

C. In the alternative to declare the State's Forcible Entry and Detainer Act as unconstitutional as it prevents a defense by "displaced persons"

D. In the alternative to declare the State's "Displaced Person Act as unconstitutional as having no force of law.

E. That the denial of a hearing as required by 310 ILCS 40/4,and40/5 is a violation of the Fourteenth Amendment to the U.S. Constitution

**COUNT II**
**Unequal protection of the laws and violation of Due Process**

NOW COMES the Plaintiff and complains against the State Defendants as follows;

14. The Plaintiff adopts Paragraphs 1 through 13 of Count I as paragraph 14 of this Count II.

15. ON July 1, 1984 The General Assembly adopted House Joint Resolution 171. The general Assembly directed IDOT and the Tollway to engage in studies and corridor preservation as permitted by law. The relevant provisions are contained as follows;

> WHEREAS, The General Assembly finds that it is in the best interest of the People of the State of Illinois to identify, designate, and preserve a 300 foot wide corridor for highway purposes continuing from the south terminus of the aforementioned North-South toll highway at 1-55 extending southerly to a termination point at 1-80 (near New Lenox); therefore be it
>
> RESOLVED, BY THE HOUSE OF REPRESENTATIVES OF THE EIGHTY-THIRD GENERAL ASSEMBLY OF THE STATE OF ILLINOIS, THE SENATE CONCURRING HEREIN, That the facts found in the preamble to this Resolution are hereby found to be true and correct; and be it further
>
> RESOLVED, That the Secretary of the Illinois Department of Transportation is hereby directed to perform and prepare any necessary engineering studies and surveys to identify a highway corridor approximately 300 feet in width extending between I-55 (near Bolingbrook) on the North and 1-80 (near New Lenox) on the South; and be it further
>
> *RESOLVED, That the Illinois Department of Transportation is hereby authorized to take such actions and efforts, as may be permitted by law, to preserve and protect the identified corridor for future highway construction purposes including where necessary in cases of hardship, or for the protection of the corridor, the purchase of right of way directly affected by the identified corridor; and be it further* [emphasis added]
>
> RESOLVED, That the Illinois Department of Transportation, with the assistance and cooperation of the Illinois State Toll Highway Authority, is hereby authorized and directed to conduct a traffic engineering and feasibility study for the construction of a toll highway within the

> aforementioned and identified corridor, to be completed and filed with the Governor, the Clerk of the House or Representatives and the Secretary of the Senate no later than the date preliminary plans are submitted to the Governor in accord with Section 14.1, aforementioned, for any toll highway not existing as of the date this resolution is adopted and be it further
>
> RESOLVED, That a copy of this preamble and resolution be immediately forwarded to the Secretary of the Illinois Department of Transportation and the Chairman and the Directors of the Illinois State Toll Highway Authority.

16. IDOT and ISTHA prepared a study, which was presented to the General Assembly on July 22, 1985. The report states in pertinent part;

> " House Joint Resolution 171, adopted July 1, 1984, directed the Department of Transportation, with the assistance and cooperation of the Illinois State Toll Highway Authority, to identify and preserve the highway corridor and to conduct a feasibility study for the construction of a toll highway from the present terminus of the North-South Tollway at 1-55 to 1-80 near New Lenox in Will County.
>
> Included with this transmittal is a final report, "Proposed North-South Tollway Extension Alternatives, Will County." This report is based on the previous preliminary feasibility study of the proposed facility and includes enhanced socioeconomic data, which reflect greater land use and higher employment and population projections in the corridor than were used before. *The finding of this report is that the proposed extension of the North-South Tollway is not currently feasible.* " [Emphasis added]

17. The State's Corridor Preservation Law 605 ILCS Sec. 5/4-510 requires IDOT to hold public hearings and to record a map of reservation with the county clerk in each of the counties to be affected by the proposed project. IDOT is required to give registered mail notice to each individual property owner within the identified corridor. If any owner chooses to improve their property they must give notice to the department. IDOT must then allow the owner to develop their property or make an immediate purchase of the property.

18. The IDOT Policies and Procedures Manual at Sec 1.05-6 clearly explains the requirements for corridor preservation as follows;

**1.05-6 <u>CORRIDOR PROTECTION MAP</u>**

> "Section 4-510 of the Illinois Highway Code provides a means of protecting from development the right of way of a proposed new state highway (Ill. Rev. Stat. 1991, Ch. 121, Par. 4-510). Under this statute. the Department may establish presently the approximate locations and widths

of rights of way for future additions to the state highway system to inform the public and prevent costly and conflicting development of the land involved."

There are a series of steps specified which include holding a public hearing, recording a Corridor Protection Map and thereafter serving a registered mail notice on the affected land owners. After these notices are given, the property owners are not to build improvements or start developments without giving the Department 60-day advance notice. The Department then has 45 days to decide whether or not to buy the right of way and an additional 120 days to complete the purchase or start condemnation. If the property owner builds improvement without giving such notice, the Department will not have to pay for the improvements when the right of way is acquired. The statute also authorizes the Department to acquire at any time, by purchase or condemnation, the right of way needed for such additions to the highway system.

Recording such a Corridor Protection Map is the only means the Department has of positively protecting the alignment of a future highway. However, this entails more than just holding the hearing, recording the map and notifying the landowners. Protection is only gained by a commitment of sufficient resources and manpower to buy the right of way when notified of a pending development.

The Corridor Protection Map would normally be prepared as part of the location study for the new highway. The statute requires that the "Department shall make a survey and prepare a map showing the location and approximate widths of the rights of way needed . . . The map shall show existing highways in the area involved and the property lines and owners of record of all land that will be needed . . . and all other pertinent information." Following preparation of the Map, the Department must hold a public hearing after advertising such hearing in the local newspapers. Usually this will be the public hearing held in conjunction with the location and environmental studies for the project; however, the Department could hold a separate hearing just to receive testimony on the Map.

After evaluating the testimony and making any resulting changes in the Map, the Department approves the map. This approval should be by the secretary. This approval and a copy of the Map are to be filed in the Office of the Recorder in all counties in which the needed land is located. Notice of the approval and the filing of the Map are published as a legal notice in the local newspapers and served by registered mail within 60 days on all owners of record of the needed land."

19. The requirements of a public hearing prior to acquisitions of property is also a matter of official state policy. Sec 8.00 of IDOT's manual states;

> " It is appropriate to have full consideration of social, economic, and environmental impacts and that there be meaningful input from the public into the project development through the public hearing process. *Consequently no right of way activities which involve contacts outside of the department shall begin until after a public hearing has been held.* "[Emphasis added]

20. IDOT officials have been acquiring properties without the provisions of The State's Corridor Preservation statute as mandated by the General Assembly. IDOT officials were preserving their corridor by appearing at local zoning boards and requesting denial of building and zoning permits. This was affirmed by an order of the court IDOT v. First Nat'l Bank of Joliet, Et Al. Case No. 91ED15060 dated August 6,1992. IDOT officials also began a program of property acquisitions under 605 ILCS Sec.5/4-501 of the State's Highway Code. The Attorney General's office maintains that this statute gives IDOT the Authority to acquire any properties for any purpose at any time without legislative authority. IDOT established a commitment to construct this project without environmental studies or corridor preservation as mandated by the General Assembly. IDOT officials, with the cooperation of the office of the Attorney General, and the Governor, acquired properties under the legal pretense that IDOT had already been given the authorization for construction of this project. The complaint for condemnation for the property of Mr. Donald Hedge No.91ED15060, as cited above filed in 1991, states, that IDOT has located, approved, and authorized the construction of FAP 431, (I-355), in Will County Illinois. This document is signed by Governor Jim Edgar, Kirk Brown Sec. of IDOT, and Roland Burris the Attorney General. This acquisition occurred more than three years before the provision of a public hearing or the preparation of environmental studies as required by State and Federal law. A copy of the complaint is attached hereto as (Exhibit D).

21. The Tollway authority is now preparing to engage in corridor preservation pursuant to the State's corridor preservation statute for the third phase of the I-355 project. It is an arbitrary, capricious and unequal protection of the law to provide persons located in the third phase of the project with the protection of 605ILCS Sec. 5/4-510 of the Highway code, while this plaintiff and all others located within the second phase of the I-355 project were arbitrarily and capriciously denied the protection of this law.

WHEREFORE with no other remedy under State law the Plaintiff prays this Honorable Court to issue an order that

A. The arbitrary and capricious use of 605 ILCS 5/4-501 and 605 ILCS 5/4-510 is an unequal protection of the laws and therefore violates the Fourteenth Amendment to the U.S. Constitution.
B. The arbitrary denial of the protections of notice and hearing provided in 605 ILCS 5/4-510 has denied the Plaintiff the protection of due process of law under the Fourteenth Amendment to the U.S. Constitution.

C. The plaintiff is entitled to damages for the loss of his home ,business, credit and savings in amounts to be determined by this Honorable Court to be fair and just in this matter.

**COUNT III**
**Violation of 40 CFR Sec. 1502 (g)**
**42 USC Sec. 108 (2) (E),**
**and the National Environmental Policy Act**

NOW COMES the plaintiff and complains of the Federal and State Defendants as follows;

22. The Plaintiff adopts Paragraphs 1 through 21 of Counts I and II as paragraph 22 of this Count III.

23. Sec. 1.05-6 of IDOT's Policies and Procedures Manual states that the required public hearing for corridor preservation under 605 ILCS Sec 4-510 is usually the same public hearing as required for the preparation of an Environmental Impact Statement. NEPA requires that an Environmental Impact Statement must be prepared prior to the preservation of a corridor for a future highway. This is because an environmental study is to be the process by which a decision or commitment can be made to build a project. An environmental analysis cannot be used to justify decisions that have already been made as required pursuant to 40 CFR Sec.1502 (g). The defendants have never provided studies, which support or justify the construction of I-355 prior to the acquisitions of property under 605 ILCS Sec. 5/4-510 of the Highway Code

24. The defendants IDOT and ISTHA were cooperating Agencies under the lead Agency the FHWA for the purpose of preparing an environmental impact statement. State laws require the defendants to cooperate with the Federal Government and to comply with Federal Laws. The defendants have violated the provisions of 42 USC Sec. 108 (2)(E), which states;

> **Terms and conditions.**-The Federal share payable of the costs described in paragraph (1) shall be eligible for reimbursement out of funds apportioned to a State under this title when the rights-of-way acquired are incorporated into a project eligible for surface transportation program funds, if the State demonstrates to the Secretary and the Secretary finds that the alternative for which the right of way is acquired is selected by the State pursuant to regulations to be issued by the Secretary which provide for the consideration of the environmental impacts of various alternatives;

25. The Defendants have failed to consider alternatives in the preparation of the Environmental Impact Statement for this project. The Federal Courts in the case of Sierra Club ET. Al. vs. Kirk Brown ET.AL.No.96 C 4768 have found that the defendants failed to prepare an adequate environmental impact statement for this project. The defendants

failed to consider alternatives to the construction of the Tollway including a no-build scenario.

26. The requirements of a public hearing prior to acquisitions of property is also a matter of official State policy. Sec 8.00 of IDOT's manual states;

> " It is appropriate to have full consideration of social, economic, and environmental impacts and that there be meaningful input from the public into the project development through the public hearing process. Consequently no right of way activities which involve contacts outside of the department shall begin until after a public hearing has been held."

27. The required public hearing for I-355 was held during the month of November 1994. The public record shows that IDOT never recorded a corridor preservation map, and that many properties had been acquired prior to the Public Hearing. This conduct deprived the plaintiff and all others so situated from their right to a hearing and proper notification pursuant to 605 ILCS Sec. 5/4-510.

28. IDOT officials, with the cooperation of the office of the Attorney General, and the Governor, acquired property under the legal pretense that IDOT had already been given the authorization for construction. The attached complaint for the condemnation of the Don Hedge property clearly shows a commitment to construct the project without environmental studies or the provision of a required public hearing. (See Exhibit D). Each of the officials involved in the unlawful acquisitions has received substantial campaign contributions in return for their commitment to construct this project without following the requirements of 605 ILCS Sec. 5/4-510 or Federal laws. The commitment to construct this project without the provision of an environmental analysis is a violation of 40 CFR Sec.1502 (g).

29. IDOT officials also engaged in misrepresentation and omission in the preparation of the Environmental Impact Statement so as to cast the project in a favorable light. This plaintiff provided testimony and certified copies of the plaintiff's eviction proceedings and transcripts. The copies of the plaintiff's court records contained admissions under oath by IDOT officials that IDOT was violating numerous provisions of relocation laws and that IDOT was not complying with the State's Corridor Preservation Statute. Upon later examination it was found that the plaintiff's documents were removed from the public record by IDOT officials. This conduct deprived the plaintiff of his rights under the first Amendment to the U.S. Consttitution. The written responses to the public hearing were also misrepresented. There were 256 responses of which 16 were in favor of the project. 240 responses were not in favor of the project. IDOT officials claimed in the Environmental Impact Statement that the public was in favor of the project. IDOT further failed to list the plaintiff's business as a business to be displaced by the project. This was contrary to the admissions of IDOT officials in the eviction trial who testified that the plaintiff was entitled to relocation assistance for his business and had never been properly advised of this fact in the initiation of negotiations as required by law.

WHEREFORE the plaintiff prays this Honorable Court to issue an injunction against the Federal and State Defendants to prevent The Federal approval of this project for the violations of Federal laws and regulations as stated herein.

**COUNT IV**
**Violations of 42 USC § 4630**

NOW COMES the plaintiff and complains of the Federal Defendant as follows;

30. The Plaintiff adopts Paragraphs 1 through 29 of Counts I through III as paragraph 30 of this Count IV.

31. The US Department of Transportation is bound by 42 USC § 4630 to withhold Federal financial assistance where it has been shown that the State has not complied with the requirements of the Federal Uniform Relocation Act. The State defendants in this project have provided to the Federal Highway Administration with a project relocation plan, which gives assurances of compliance with the URA, and lists this plaintiff by name as a person to be displaced by this project. The project relocation plan also states the intent of the State defendants to seek Federal financial assistance for this project. The State defendants have publicly announced their intention to seek Federal financial assistance for this project as the State does not have the funds to construct this project. The plaintiff has never received relocation assistance or benefits. The General Assembly of Illinois conducted special hearings concerning the conduct of the Tollway Authority . At those hearings numerous families appeared and testified that they did not receive relocation assistance or benefits.

32. The State Displaced Person Act 310 ILCS Sec 40/4 requires the tollway to adopt rules and regulations and to publish those regulations in the State's administrative code. The Tollway Authority refuses to adopt such rules and regulations in defiance of State law. The Tollway authority has further advised the FHWA that they do not want to give the impression that they are bound by these laws. The relevant sections of Federal law states as follows;

> **§ 4630. Requirirements for relocation payments and assistance of Federally assisted programs: assurances of availability of housing**
> Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a displacing agency (other than a Federal agency), under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the displacement of any person on or after the effective date of this title [enacted Jan. 2, 1971], unless he receives satisfactory assurances from such displacing agency that-
> (1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under sections 202, 203, and 204 [42 USCS §§ 4622-4624] of this title;

(2) relocation assistance programs offering the services described in section 205 (42 USCS § 4625] shall be provided to such displaced persons;
(3) within a reasonable period of time prior to displacement, comparable replacement dwellings will be available to displaced persons in accordance with section 205(c)(3) [42 USCS § 4625(c)(3)].
(Jan. 2, 1971, P. L. 91-646, Title II, § 210, 84 Stat. 1899; Apr. 2, 1987, P. L. 100-17, Title IV, § 410, 101 Stat. 254.)

33. The State Defendants have failed to live up to their obligations to provide relocation assistance and benefits as required under the above mentioned Federal Statute. It is the duty under this law that the Secretary of the U.S. Department of Transportation withhold Federal financial assistance for this project.

WHEREFORE the plaintiff prays this Honorable Court to enjoin the Secretary of the U.S. Department of Transportation from providing any and all financial assistance for this project until such time that the State defendants properly adopt rules and regulations as required by law and to provide relocation assistance and benefits to this plaintiff and all other persons, families, and businesses that have already been displaced without the provision of such assistance and benefits as required by State and Federal law.

**COUNT V**
**Malicious Abuse of Process**

NOW COMES the plaintiff and complains of the State defendants as follows;

34. The Plaintiff adopts Paragraphs 1 through 33 of Counts I through IV as paragraph 34 of this Count V.

**A. Contempt of Federal Court orders**

35. The State Defendants are in contempt of Federal Court orders by continuing to file re-litigations of the original eviction proceedings case No.92LM7581 against the Plaintiff and his family. The Appellate Court has ruled that the issue of the Plaintiffs original eviction by way of the re-litigation is not final. The order of the court No 3-98-0342 was issued on 7/15/99. The re-litigation against the plaintiff's wife Susan Walliser Case No. 98FE00958 was dismissed in favor of the plaintiff's wife. Each of these actions for rent is prohibited by order of the Federal Bankruptcy Court No.96B14083 dated 10/18/96. The pleadings of the Attorney Generals office swearing that these rents continue to be due and owing is a contempt of the discharge order in Federal Court and is also a violation of 11USC § 523 as the Attorney General's office well knows. The complaints in The State Court proceedings swearing to the owing of rents that the defendants knew to be discharged in bankruptcy is also an act of perjury. The Attorney General's office has been corrupted by political influence related to the collection of

campaign contributions in return for providing information on proposed tollway interchange locations to politically connected developers.

**B. The Criminal Investigation**

36. After the plaintiff complained of the acquisition of properties to the governor's office, the State Police political investigation unit started an investigation. The Plaintiff had provided information pertaining to the acquisition of property of Don Hedge contained in( Exhibit D ). As a result a search warrant was issued as part of the investigation. The search warrant is attached hereto as( Exhibit E ). The warrant implicates IDOT officials who had acted to deny to the plaintiff his relocation rights and the right to a hearing. The IDOT officials implicated in the criminal investigation included Mr. Bryk and Kirk Brown.

37. The State defendants continued to seek to enforce the original eviction judgment against the plaintiff. The original eviction judge The Hon. Gilbert Niznik ordered the Assistant Attorney General out of his courtroom stating that the plaintiffs have suffered enough and that he was through with them and they would have to find another judge. The defendants then engaged in judge shopping and continued to seek to enforce the original judgement against the plaintiff. The defendants were turned down 4 times based upon the rulings of the court that the plaintiff's wife Susan Walliser was never a proper party to the original proceeding. The defendants then engaged in an ex parte hearing in front of Judge Thomas Dunn. The plaintiff had complained in his counterclaim to the re-litigation that the law firm owned by Thomas Dunn had participated in the unlawful acquisitions of properties contained in (Exhibit D), in return for campaign contributions. The law partner of Thomas Dunn was questioned in the criminal investigation in the attached search warrant. Judge Dunn violated numerous judicial canons by adjudicating an ex parte proceeding in this matter and the chief judge ordered a rehearing with a new judge. At the rehearing the new judge ordered that there was no jurisdiction to entertain any action in the circuit court because the Appellate Court was reviewing the matter. The defendants without a proper order instructed the Sheriff of Will County that the order of Judge Dunn was a valid order and the business equipment of the plaintiff was forcibly evicted without notice to the plaintiff and without the right to a hearing. Illinois law 735 ILCS 5/9-117 assures the right of the plaintiff in a post judgment proceeding to notice and a hearing in which the plaintiff has the right to plead equitable matters in order to prevent the enforcement of the order. The defendants and judge Dunn acted to deny this plaintiff's statutory and constitutional right to notice and hearing. The plaintiff secured the campaign disclosures of Judge Dunn and discovered that he had been unlawfully receiving contributions from a pro tollway lobbyist Al Ronin, who is also a subject of the criminal investigation in the attached search warrant.

38. The plaintiff also discovered that Pate Phillip the president of the State Senate had instructed IDOT officials to assist Don Hedge his "good friend" in providing information concerning tollway interchange locations. (See Exhibits F,G,and H ). Don Hedge made substantial campaign contributions to connected Tollway officials ( See Exhibit E) .The actions of Don Hedge are fully documented in the attached Search Warrant. The State

officials were violating the requirements of the State's corridor preservation statute in order to provide advance knowledge of interchange locations in return for campaign contributions.

39. In his efforts to seek justice the plaintiff approached Miriam Santos during the last State election. The plaintiff met with Alton Miller, The campaign chairman for Miriam Santos and provided documentation showing the corruption behind the Attorney General's office in return for campaign contributions. The Plaintiff provided campaign documents that showed Roland Burris had received $15,000 dollars that came directly from the office of the tollway authority, in return for approving political appointments connected to the questionable land deals. Alton Miller advised the plaintiff that the Democratic party would never allow any proceeding that would compromise Roland Burris. Alton Miller offered to provide the possibility of a favorable review of the plaintiff's claims if he helped to elect Miriam Santos. The Plaintiff never again spoke to Alton Miller and has provided information to the Federal Prosecutors in the current prosecution against Miriam Santos. However, Roland Burris as Attorney General of Illinois engaged in far more serious abuses than Miriam Santos as has many other high ranking State officials indicated in the attached search warrant and the attached condemnation complaint, (See Exhibit D). The collection of campaign contributions has created a pervasive atmosphere of corruption that was not limited to the Secretary of States Office. Candidates to judicial office in Illinois were also warned by their respective political parties, to support the construction of new tollways or lose the support of their political party for reelection to judicial office.

40. The State Police sought to expand their investigation of the issues of the plaintiff's case but were ordered by the Attorney Generals Office to stop any further investigation. The Plaintiff was advised by the head of the investigating unit that the Attorney General's office was following their own agenda and that the plaintiffs only recourse would be Federal in nature. The Plaintiff has been the victim of a cover up of a land for sale scandal that is far more corrupt than the concurrent license for sale scandal.

**D. Enforcement of void orders without jurisdiction of the parties**

41. The plaintiff has been denied any and all state court remedies for the violations of his rights. The Circuit Court has determined that the plaintiff's wife Susan Walliser was never a proper party to the original eviction proceeding. The plaintiff sought to join both Susan Walliser and his Business J.Walliser Ltd. as parties to the original action. The Assistant Attorney General Kathy Twine threatened the plaintiff with criminal prosecution for practicing law without a license. The plaintiff had to withhold all references to the rights of his business and wife or suffer criminal prosecution. In response to the admissions of IDOT officials to violating State Laws at trial Kathy Twine advised this plaintiff that she was the attorney for IDOT and not the attorney for the People of Illinois. Kathy Twine admitted to the plaintiff that she was to receive a political appointment directly after her prosecution of the plaintiff. Kathy Twine was given a political fast track and is now the director of the Judicial Inquiry Board, thus insuring that

this plaintiff cannot proceed in any action against Judge Dunn for his acts of judicial misconduct.

**E. Enforcement of void orders without jurisdiction over the subject matter**

42. The Appellate Court in it's original ruling of the plaintiff's eviction engaged in a Sua Sponte review of an agency regulation concerning the definition of "Displaced Person". This review was without jurisdiction over the subject matter as the State's Displaced Person Act" 310 ILCS Sec 40/5 specifically adopted the administrative review act as the exclusive jurisdiction to review matters pertaining to relocation assistance and benefits. This law assures the plaintiff of a full and fair hearing process, which was denied to the plaintiff under a restrictive proceeding of Forcible Entry and Detainer. The court relied upon the representations of the Attorney General's pleadings that Illinois has never adopted this law. In the relitigation of the original eviction the Attorney General's legal position has changed stating that even if this law should exist IDOT does not have to obey it.

43. The defendants engaged in misrepresentations before the Appellate Court in the matter of *IDOT v. Walliser* 629 NE 2d. 1189 (1994). The defendants misrepresented the Agency regulation found at Title 92 Illinois Administrative Code Ch.I, Section 518.20. The agency regulation as was misrepresented to the Court is in direct contradiction of state statute 310 ILCS Sec. 40/1a. and Federal statute 42 U.S.C Sec. 4601 Par.(6)(A)and(6)(B)(ii). The State defendants advised the court that the plaintiff was not a displaced person because the plaintiff had not yet been displaced. This argument was based upon the definition of displaced person according to Title 92 Illinois Administrative Code Ch.I, Section 518. 20 . The language contained in the administrative code defining displaced person was stricken from the State statute by Public Act 85-1407 effective September 22, 1988. The language used by the Court and urged by the defendant IDOT had been stricken from State Law in order to comply with the Federal Uniform Act Amendments of 1987. The State has failed to provide a hearing to the plaintiff to correct an order based upon language that has been stricken from law. The plaintiff has a Constitutional right to be bound by laws that exist at the time and not by laws that have been repealed.

44. IDOT officials have at all times admitted that the plaintiff is and was a "Displaced Person". The defendants have admitted this fact in response to the plaintiff's allegation of fraud perpetrated upon the Court. Title 92 Illinois Administrative Code Ch.I Sec.518.105 states that persons who are evicted retain the right to relocation assistance and benefits. Sec 518.405 states that eligibility is established as of the date of the initiation of negotiation, which the defendants admit was September 11, 1990. The definition of displaced person according to 310 ILCS Sec.40/1a. is the same as the definition of displaced person according to the Federal Uniform Relocation Act 42 U.S.C Sec. 4601. The Federal Uniform Act (URA) clearly defines displaced persons and persons not displaced. As stated in 42 USC Sec 4601 Para (6) (B). The term *"displaced person"* does not include-....(ii) in any case in which the displacing agency acquires property for a

program or project, any person *(other than a person who was an occupant of such property at the time it was acquired)* who occupies such property on a rental basis for a short term or a period subject to termination when the property is needed for the program or project. [emphasis added ]

45. In the denial of the plaintiff's counterclaim in the re-litigation of the original eviction the Court took notice that the plaintiff had moved from his dwelling but then held that he was still not a "Displaced Person". This ruling was based upon the previous ruling of the Appellate Court, which held that the plaintiff was not a displaced person because he had not moved. The court has failed to follow it's own rulings. The plaintiff has been denied any opportunity to correct the rulings of the State Courts that were based upon misrepresentations of fact and law and were issued without jurisdiction of the parties or the subject matter. The Appellate Court initially denied jurisdiction and refused to provide an review of the merits. The Court subsequently held that the plaintiff's new claims were res judicata, while concurrently ruling that the re-litigation of the eviction was not final. The plaintiff has been denied any and all opportunity for a hearing of his rights and has been denied those rights as a cover-up involving prosecutoral and judicial misconduct. There now exists 3 separate State Court rulings pertaining to the same subject matter. In the original eviction proceeding 92LM7581 the plaintiff was held that he could not plead relocation rights and benefits as a defense. In the re-litigation of the original eviction proceeding 96FE1850 the court has ruled that the issue of the eviction is not final. In the eviction of the plaintiff's wife 98FE00958 for the same non-payments of rent the court dismissed the action in favor of the plaintiff's wife with prejudice. Each State Court ruling contradicts the other rulings and have acted to violate the due process rights of the plaintiff . The plaintiff has been denied the right to notice and hearing under 4 different State laws in order to prevent the admissions of IDOT officials concerning violations of relocation and acquisition laws from recieving the light of proper judicial scrutiny.

WHEREFORE with no other remedy under State law the plaintiff prays this Honorable court to issue a ruling that

A. The State Defendants have acted to maliciously abuse the due process rights of the plaintiff. The plaintiff is entitled to compensatory and punitive damages for the wrongful denial of the plaintiff's rights to due process of law including the right to a hearing pursuant to 310 ILCS 40/5
B. To order compensatory and punitive damages in this matter to the plaintiff, as a result of the malicious enforcement of void orders without jurisdiction over the parties or the subject matter without the right to a hearing to preserve the plaintiff's rights.
C. The State court actions seeking the payments of rents that were discharged by Federal Court in the plaintiffs bankruptcy proceedings constitute a contemptuous disregard of the plaintiffs Federal discharge orders and that the State defendants are in violation 11USC § 523 . That the actions of the state defendants are a malicious abuse of process.

Respectfully Submitted,

John P. Walliser Pro Se
PO Box 327
Lockport IL. 60441
(708) 268-2354

**Illinois Department of Transportation**

Division of Highways/District 1
201 West Center Court/Schaumburg, Illinois/60196-1096

September 10, 1990

LAND ACQUISITION
Route : FAP 431
Section : 99-1
Project : EBF 431-1 (4)
Job No. : R-91-011-69
Parcel : 1X 20109
County : Will

**Exhibit A**

Mr. John Walliser
16246 W. 143rd St.
Lockport, IL 60441

Dear Mr. Walliser:

The People of the State of Illinois, through the Division of Highways of the Department of Transportation, have in process a long-range highway construction program designed to build our Illinois transportation facilities so that they may best serve the needs of the people and provide for the economic development of our State. The subject highway improvement, to be constructed in your area, is one of the specific and necessary links in this planned highway system.

It is often necessary to acquire and remove homes and business buildings from the proposed locations of these highway improvements in order to obtain the best alignment for the highway in accord with the detailed studies made by the Division of Highways. These studies indicate that you will be displaced by the subject project.

A Relocation Assistance and Payments Program has been developed by the Department in an effort to minimize inconveniences and hardships imposed on persons or businesses displaced by reason of construction work. In order to be eligible to receive payments, you must be occupying the subject parcel of real property to be acquired for the project, as an owner or tenant, on the date that negotiations are initiated to acquire said parcel of real property.

All individuals, families, businesses, farm operations, and non-profit organizations are eligible to receive a payment for their reasonable and necessary moving expenses. In addition to moving expenses, eligible residential homeowner-occupants and tenant-occupants may be entitled to receive a purchase or rent supplement in an amount necessary to enable them to purchase or rent decent, safe, and sanitary residential replacement housing. (NOTE: You should always request a decent, safe, and sanitary inspection before you make a commitment to buy or rent.) In your case, it has been determined that you may be eligible to receive a purchase supplement in the amount of $7,900.00.

This amount represents the difference as determined by the Department between the amount approved for acquisition of your home and the cost of a representa-

increased mortgage costs, if any, and the incidental costs incurred in obtaining such replacement housing are also elements of the replacement housing payment. (Property owners can also apply for reimbursement for expenses actually incurred, if any, in transferring real property to the State.) The representative replacement dwelling used to compute your maximum replacement housing payment is located at 13830 S. Teakwood Dr., Homer Township, and the adjusted asking price of same is 195,900.00.

Your assigned relocation representative, whose name and telephone number are D. Ruskey / C. Lopardo (708)705-4280, is available to answer any of your questions and will provide relocation advisory services, including referrals to replacement properties if you wish; help in filing payment claims; and other necessary assistance to help you to successfully relocate. In the event you are dissatisfied with the amount of your relocation payment, including property transfer expenses, or your eligibility to receive the same, he will also advise you and assist you in filing a request for a review of your claim by the District Engineer and by the Director of Highways. You may also wish to request the courts, State and/or Federal, to redress your grievances if they are not resolved to your satisfaction. In any event, your relocation representative would like to help. Please do not hesitate to call him for further information at any time.

The Department initiated negotiations to acquire the property which you occupy on September 11, 1990. Based on the best information available to us, it is anticipated that this property will be needed for construction on or about March 30, 1991. Under no circumstance will you be required to move from your home or business or farm, as the case may be, before 90 days from the date of this notice, or in the case of a residence, the date a comparable replacement dwelling is available to you, whichever is later. At the time you are asked to vacate the property, you will receive a 30-day notice which will specify the date by which the property must be vacated.

We want you to know that the Department is truly interested and concerned with your welfare and your impending relocation and has, therefore, adopted the following policy: "It is the policy of the Department that no family or individual occupying a dwelling can be displaced by the Department's highway construction projects unless and until comparable replacement housing is made available to, or provided for, all of those to be displaced by the project."

Very truly yours,

James C. Slifer, P.E.
District Engineer

By: *John P. Friedrich*
John P. Friedrich
District Land Acquisition Engineer

CSL:am

**Illinois Department of Transportation**

Office of the Secretary
2300 South Dirksen Parkway/Springfield, Illinois/62764
Telephone 217/782-5597

October 14, 1994

Mr. John P. Walliser
P. O. Box 327
Lockport, Illinois 60441

Dear Mr. Walliser:

Governor Edgar has asked that we respond to your letter dated August 29, 1994. Our Bureau Chief of Land Acquisition, David E. Schinneer, talked to you on August 26, 1994 about the issues raised in your letter. Since there is ongoing litigation about your eviction for failure to pay rent, we are not going to address those issues.

You are entitled to relocation assistance. You met with department personnel on September 11, 1990 to discuss your relocation situation. During that meeting you indicated that you would let us know of your relocation needs. On March 2, 1991 you called and said that you planned to build your own replacement home. Your response ended our efforts to find a comparable replacement home.

Since you have not built your replacement home, we are prepared to provide you relocation assistance. In order to initiate this process, you will have to notify us of the specifics you are looking for in a replacement home. Our Schaumburg office will be sending you the claim forms you requested. Once you have relocated from your present residence, submit the completed forms to them.

The problems you identified with your parcel number two have been fully litigated. This project is still in the planning stage. If it is finally determined that any of the property you describe as parcel two is required, you will be contacted.

I assure you that the department will fulfill its obligations involving your relocation in accordance with our policies and procedures.

Sincerely,

Kirk Brown
Secretary

cc: Governor James Edgar

**Exhibit B**

**LAND ACQUISITION CONSULTING INC.**
**515 DUNBARTON DRIVE**
**SHERMAN, ILLINOIS 62684**
**PHONE 217-496-2628**

BUREAU OF LAND ACQUISITION
FEB 20 9 46 AM '97
ACQ ... SECY ...

February 19, 1997

Illinois Department of Transportation
Attention: David E. Schinneer
2300 South Dirksen Parkway
Springfield, Illinois 62764

Reference Mr. John P. Walliser

Dear Mr. Schinneer:

On February 18, 1997, I contacted Mr. Walliser by telephone to confirm our appointment for a Relocation Review at 9:00 A.M. on February 28, 1997. Mr. Walliser said he will not be able to meet with me because the eviction proceedings are taking up all of his time. He said he has not had time to review the District's Reloction files and until he reviews them he will not be in a position to present his case at the Relocation Review.

We agreed to cancel the February 28, 1997 review and re-schedule it at a later date. I requested that he call me when he is ready to set up another date and time for the Relocation Review.

Sincerely,

Michael Volk

cc: Al Byrk

**Exhibit C**

STATE OF ILLINOIS )
) SS.
COUNTY OF WILL )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

| | |
|---|---|
| THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, for and on behalf of the People of the State of Illinois, Plaintiffs, | |
| vs. | No. 91 ED 15260 |
| FIRST NATIONAL BANK OF JOLIET, as Trustee under Trust Number 3597, HARRIS BANK HINSDALE, as Trustee under Trust Number L-2273, and HARRIS BANK OF HINSDALE, as mortgagee, CONTINENTAL OFFICES, LTD., and UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, Defendants. | Job No: R-91-011-69<br>Parcel: 1X20112 |

JURY DEMAND

The undersigned demands a jury trial.

MICHAEL J. MARTIN
Special Assistant Attorney General

MICHAEL J. MARTIN
Attorney Number: 1781960
Special Assistant Attorney General
57 North Ottawa Street
Suite 612
Joliet, Illinois 60431
(815)726-7311

Exhibit D

STATE OF ILLINOIS )
) SS.
COUNTY OF WILL )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, for and on behalf of the People of the State of Illinois,

Plaintiffs,

vs.

No. 91 ED 15260

FIRST NATIONAL BANK OF JOLIET, as Trustee under Trust Number 3597, HARRIS BANK HINSDALE, as Trustee under Trust Number L-2273, and HARRIS BANK OF HINSDALE, as mortgagee, CONTINENTAL OFFICES, LTD., and UNKNOWN OWNERS AND NON-RECORD CLAIMANTS,

Defendants.

Job No: R-91-011-69

Parcel: 1X20112

COMPLAINT FOR CONDEMNATION

THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, for and on behalf of the People of the State of Illinois, by ROLAND W. BURRIS, Attorney General, and MICHAEL J. MARTIN, Special Assistant Attorney General, respectfully states:

1. The Department of Transportation of the State of Illinois, pursuant to Ill. Rev. Stats. 1989, Ch. 121, Par. 2-101 through 2-220 and Par. 4-101 through 4-511 and Ch. 127, par. 51. has the power to exercise eminent domain, and under and by virtue thereof, Plaintiff has selected, approved, designated and authorized the construction of FAP Route 340, in Will County, Illinois.

2. That the lands, rights or other property hereinafter described are private property, and the persons hereinafter mentioned in connection therewith are, so far as appears of record, and so far as your plaintiff has been able to learn, are the persons who own, or otherwise are interested in the same or claim to have some interest therein.

3. That the work and improvement aforesaid is a public work, is for public use and constitutes a public purpose, namely, the construction of FAP Route 340 in Will County, Illinois; that it is necessary the Plaintiff have and acquire for the use of the

People of the State of Illinois for highway purposes the lands, rights or other property hereinafter described.

4. That plaintiff under the provisions of the Ill. Rev. Stats. 1989, Ch. 121, Par. 2-101 through 2-220 and Par. 4-101 through 4-511 and Ch. 127, par. 51 is authorized to acquire for the purposes aforesaid, the fee simple title, or such lesser interest as may be desired, to the lands, rights or other property hereinafter described; that the plaintiff seeks the fee simple title to the property hereinafter legally described, and that it is necessary that plaintiff have and acquire for the use of the People of the State of Illinois, the lands and premises hereinafter particularly described for public use, namely: public highway purposes.

5. That the compensation to be paid by the plaintiff for and in respect to said lands, rights and other property hereinafter described cannot be agreed upon between the plaintiff and the parties interested therein, although plaintiff has attempted to effect such an agreement, that Plaintiff has not been able to obtain title to said property by purchase, donation or any other manner, although it has attempted to do so, that plaintiff, therefore, is authorized to proceed to acquire said lands, rights or other property through exercise of the right of eminent domain under the eminent domain laws of this State.

6. That plaintiff now seeks to acquire for the uses and purposes aforesaid fee simple title, or such lesser title as set forth below, in the property legally described below, and that the names of all persons interested therein as owners or otherwise, as appearing of record and as known to Plaintiff (all of whom are made parties defendant to this action) are as follows:

PARCEL 1X20112
(Plaintiff seeks Fee Simple Title)

Legal Description is contained on Exhibit #1, which is attached hereto and hereby incorporated and made a part of this Complaint.

OWNERS OF RECORD: FIRST NATIONAL BANK OF JOLIET, as Trustee under Trust Number 3597, 78 North Chicago Street, Joliet, Illinois 60431

PERSONS OTHERWISE INTERESTED:

HARRIS BANK HINSDALE, as Trustee under Trust Agreement dated April 10, 1989, and known as Trust No. L-2273, and as Mortgagee, in a Document dated May 19, 1989 and recorded May 23, 1989 as Document Number R89-24494, and, as assignee, in

a Document dated May 19, 1989 and recorded May 23, 1989, as Document Number R89-24495.

CONTINENTAL OFFICES, LTD., as Assignee in facsimile assignment recorded as Document Number R91-9486.

UNKNOWN HEIRS, DEVISEES, AND UNKNOWN SPOUSES, IF ANY, AND UNKNOWN OWNERS AND NON-RECORD CLAIMANTS

7. It is unknown whether or not all of the persons named parties defendant to this Complaint are living or dead, and upon due and diligent inquiry it cannot be ascertained whether or not such defendants be living or dead; that if any such parties named as defendants be dead, the heirs or devisees of such parties have or may have or claim some right, title, interest or lien, in, to or upon the property or some part thereof described in this Complaint; the names of such persons, or the names of any of them, who would be the heirs or devisees of such persons who are named parties defendant to this Complaint as above, and who are dead, are unknown and upon due and diligent inquiry cannot be ascertained, and Plaintiff therefore makes all such persons parties defendant to this Complaint by the name and description of "UNKNOWN OWNERS".

8. There are persons other than those named as parties defendant in this Complaint who are the spouses of certain of the parties hereinabove named, but the names of such persons are unknown, and upon due and diligent inquiry cannot be ascertained, and plaintiff therefore makes all such persons parties defendant to this Complaint by the name and description of "UNKNOWN OWNERS".

9. There are persons other than those named as parties defendant in this Complaint who do or may claim some right, title or interest in fee or some lesser estate vested or contingent in reversion, remainder or expectancy, or some charge or lien, or some inchoate or consummate dower or dower right, or as creditors of or claimants against the estates of such persons heretofore named who may have died, or as the heirs or devisees of such persons, who have a claim to or upon the real estate, or some part or parts thereof, described in this Complaint, whose names are unknown and upon due and diligent inquiry cannot be ascertained, and your plaintiff therefore makes all such person parties defendant to this Complaint by the name and description of "UNKNOWN OWNERS".

10. There are defendants herein who may be under guardianship, and defendants herein who may have conservators, but the names of the guardian of such defendants under guardianship, and the names of the conservators or such defendants having conservators, are unknown and upon due and

MICHAEL J. MARTIN
Attorney Number: 1781960
Special Assistant Attorney General
57 North Ottawa Street
Suite 612
Joliet, Illinois 60431
(815)726-7311

LEGAL DESCRIPTION

Route: FAP 340 (formerly FA 431)
Section: 99-2
County: Cook
Job No.: R-91-011-69
Parcel No.: 1X20112
Owners Name: First National Bank of Joliet as Trustee, Trust Number 3597

That part of the East Half of the Northeast Quarter of Section 24, Township 37 North, Range 10 East of the Third Principal Meridian described as follows: beginning at a point in the west line of the said East Half of the Northeast Quarter, 309.1 feet south of the north line of the Northeast Quarter of Section 24, Township 37 North, Range 10 East of the Third Principal Meridian, thence south along the said west line of the East Half of the North East Quarter to the north line of Lot 44 in Reed's Crest of Hill Estates No. 6, thence east along the said north line of Lot 44 to the Northeast corner of said Lot 44, thence south along the east line of said Lot 44, 496.19 feet to the north line of the South 20 acres of the East 64 acres of the East Half of the Northeast Quarter, thence easterly along the said north line of the south 20 acres of the East 64 acres 100.0 feet, thence northerly parallel to the east line of said Lot 44, 300.0 feet, thence easterly parallel to the said north line of the South 20 acres of the East 64 acres, 415.0 feet, thence southerly parallel to the east line of the said Lot 44, 300.0 feet to the said north line of the South 20 acres of the East 64 acres, thence easterly along said north line 122.19 feet, thence northeasterly on an angle of 24 degrees 57 minutes 51 seconds to the last described course extended, 75.02 feet, thence northerly on an angle of 63 degrees 16 minutes 57 seconds to the left of the last described course extended, 1150 feet, thence northwesterly on an angle of 1 degrees 38 minutes 12 seconds to the left of the last described course extended, 334.86 feet to the south line of the north 309.1 feet of the said East Half of the Northeast Quarter of Section 24, Township 37 North, Range 10 east of the third principal meridian, thence westerly along the said south line of the North 309.1 feet to the point of beginning in Will County, Illinois.

Said parcel contains 27.6094 acres.

MICHAEL J. MARTIN
Attorney Number: 1781960
Special Assistant Attorney General
57 North Ottawa Street
Suite 612
Joliet, Illinois 60431
(815)726-7311

SEP 27 AM
WILL COUNTY, ILLINOIS

STATE OF ILLINOIS )
) SS.
COUNTY OF WILL )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

IN RE: )
)
ISTHA INVESTIGATION ) CASE NO. 95 MR 15520
)
)

# SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

1. On this day, **Edward T. Baker**, Complainant has signed and sworn to a complaint for search warrant before me. Upon examination of the written complaint I find that said complaint on its face states facts sufficient to show probable cause for the issuance of a search warrant, and I therefore command that the following be searched:

**Exhibit E**

A. The person of:

B. The following described property:

AMERICAN CONSULTING SERVICES, INC.

The premises of American Consulting Services, Inc., Citizens for Claar, and Roger C. Claar, both of which are located at 115 Concord Lane in Bolingbrook, Illinois, being a two-story residence having brown brick on the first floor, white and brown trimmed stucco on the second floor, a brown/shingled roof and an attached garage with a white and brown trimmed garage door, as depicted in the photographs attached hereto as to Exhibits 1 and 2, and being the seventh residence west of the intersection of Route 53 and Concord Lane, on the west side of Concord Lane as it turns to the north, or the second residence south of the intersection of Clover Lane and Concord Lane.

H. PHILLIP ENGSTROM, CPA

The premises of H. Phillip Engstrom, CPA, which is located at 305 W. Briarcliff Road, in Bolingbrook, Illinois, said premises being an office located on the first floor in the southwest corner of the Bolingbrook Professional Building, being a brown two-story brick structure located at the southeast corner of the intersection of Briarcliff Road and Canterbury Lane, approximately 0.5 miles west of the intersection of Route 53 and Briarcliff Road, as depicted in the photographs attached hereto as Exhibits 3 and 4.

CITIZENS FOR CLAAR

The premises of Citizens for Claar which is located at 305 W. Briarcliff Road, in Bolingbrook, Illinois, said premises being an office located on the first floor in the southwest corner of the Bolingbrook Professional Building, being a brown two-story brick structure located at the southeast corner of the intersection of Briarcliff Road and Canterbury Lane, approximately 0.5

**miles west of the intersection of Route 53 and Briarcliff Road, as depicted in the photographs attached hereto as Exhibits 3 and 4.**

**ALFRED G. RONAN, LTD**

**The premises of Alfred G. Ronan, Ltd., which is located at 225 W. Washington Street, Suite 1700, in Chicago, Illinois, said premises being an office located on the seventeenth floor of the Marmon Building, being a brown stone structure with white stone trim located at the intersection of Washington and Franklin Streets, as depicted in the photographs attached hereto as Exhibits 5 and 6.**

2. I further command that the following described instruments, articles and things which have been used in the commission of, or which constitute evidence of, the offenses of **BRIBERY (720 ILCS 5/33-1); OFFICIAL MISCONDUCT (720 ILCS 5/33-3) and THEFT (720 ILCS 5/16-1)** and that the following be seize therefrom:

**Any and all business, financial and personal records pertaining to, associated with, or maintained by, or on behalf of, American Consulting Services, Inc., H. Phillip Engstrom, CPA, Roger C. Claar, Citizens for Claar and/or Alfred G. Ronan, Ltd., for the period 01/01/90 to the present, including but not limited to:**

**(a). All letters, memoranda or other correspondence directed to, or received from, the Illinois State Toll Highway Authority (ISTHA), the Illinois Department of Transportation (IDOT), Frank M. Howard, Robert L. Hickman, Donald F. Hedg, Continental Offices, Ltd., Roger C. Claar, Citizens for Claar, Alfred G. Ronan, Ltd., American Consulting Services, Inc., and H. Phillip Engstrom, CPA, regarding Bluff Oaks Estates or any other property acquired by ISTHA or IDOT for use in constructing the southern extension of I-355 (from I-55 to I-80);**

[signature]
Judge

Date of Issuance August 16, 1996

Time of Issuance 8:45 A.M.

RETURNED EXECUTED

Executed by searching: 115 Concord Lane, Bolingbrook, IL

on the 14th day of August, 1996 at 1:20 o'clock P.M. and seizing the articles listed in the attached inventory and returning same to Judge W. Penn; and leaving a copy of attached Search Warrant (with) (at) 115 Concord Lane Bolingbrook, IL. on 08/14, 1996

Officer

Date Returned Sept 27, 1996

Time Returned 9:15 A.M.

Judge

RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of issuance and it it is hereby returned to the Court as void and not executed.

Officer

Date Returned ________________, 19___

Time Returned ________________M.

## RETURNED EXECUTED

Executed by searching: 305 W. BRIARCLIFF Rd, BOLINGBROOK, IL. H.P. ENGSTROM'S OFC.

on the 14th day of AUGUST, 96 at 10:57 o'clock A.M. and seizing the articles

listed in the attached inventory and returning same to Judge W. PENN ; and

leaving a copy of attached Search Warrant (with) (at) SUSAN A. ANDERSON

________________ on 08/14, 1996

[signature]
Officer

Date Returned ________________, 19__

Time Returned ________________M.

________________________
Judge

## RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of issuance and it it is hereby returned to the Court as void and not executed.

________________________
Officer

Date Returned ________________, 19__

Time Returned ________________M.

## RETURNED EXECUTED

Executed by searching: 225 W. WASHINGTON ST. #1700, CHICAGO, IL.

on the 14th day of AUGUST, 1996 at 11:15 o'clock A.M. and seizing the articles

listed in the attached inventory and returning same to Judge W. PENN ; and

leaving a copy of attached Search Warrant (with) (at) EDWARD JENSEN

____________ on 08/14, 1996

[signature]
Officer

Date Returned ____________, 19__

Time Returned ____________M.

____________
Judge

## RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of issuance and it is hereby returned to the Court as void and not executed.

____________
Officer

Date Returned ____________, 19__

Time Returned ____________M.

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

COMPLAINT FOR SEARCH WARRANT

1. **Edward T. Baker**, complainant, now appears before the undersigned Judge of the Circuit Court and requests the issuance of a search warrant to search

A. The person of:

B. The following described property:

**AMERICAN CONSULTING SERVICES, INC.**

**The premises of American Consulting Services, Inc., Citizens for Claar, and Roger C. Claar, both of which a. : located at 115 Concord Lane in Bolingbrook, Illinois, being a two-story residence having brown brick on the first floor, white and brown trimmed stucco on the second floor, a brown/shingled roof and an attached garage with a white and brown trimmed garage door, as depicted in the photographs attached hereto as to Exhibits 1 and 2, and being the seventh residence west of the intersection of Route 53 and Concord Lane, on the west side of Concord Lane as it turns to the north, or the second residence south of the intersection of Clover Lane and Concord Lane.**

**H. PHILLIP ENGSTROM, CPA**

**The premises of H. Phillip Engstrom, CPA, which is located at 305 W. Briarcliff Road, in Bolingbrook, Illinois, said premises being an office located on the first floor in the southwest corner of the Bolingbrook Professional Building, being a brown two-story brick structure located at the southeast corner of the intersection of Briarcliff Road and Canterbury Lane, approximately**

0.5 miles west of the intersection of Route 53 and Briarcliff Road, as depicted in the photographs attached hereto as Exhibits 3 and 4.

CITIZENS FOR CLAAR

The premises of Citizens for Claar which is located at 305 W. Briarcliff Road, in Bolingbrook, Illinois, said premises being an office located on the first floor in the southwest corner of the Bolingbrook Professional Building, being a brown two-story brick structure located at the southeast corner of the intersection of Briarcliff Road and Canterbury Lane, approximately 0.5 miles west of the intersection of Route 53 and Briarcliff Road, as depicted in the photographs attached hereto as Exhibits 3 and 4.

ALFRED G. RONAN, LTD

The premises of Alfred G. Ronan, Ltd., which is located at 225 W. Washington Street, Suite 1700, in Chicago, Illinois, said premises being an office located on the seventeenth floor of the Marmon Building, being a brown stone structure with white stone trim located at the intersection of Washington and Franklin Streets, as depicted in the photographs attached hereto as Exhibits 5 and 6.

2. Complainant requests a search warrant for the purpose of seizing the following described instruments, articles and things:

Any and all business, financial and personal records pertaining to, associated with, or maintained by, or on behalf of, American Consulting Services, Inc., H. Phillip Engstrom, CPA, Roger C. Claar, Citizens for Claar and/or Alfred G. Ronan, Ltd., for the period 01/01/90 to the present, including but not limited to:

(a). All letters, memoranda or other correspondence directed to, or received from, the Illinois State Toll Highway Authority (ISTHA), the Illinois Department of Transportation (IDOT), Frank M. Howard, Robert L. Hickman, Donald F. Hedg, Continental Offices, Ltd., Roger

C. Claar, Citizens for Claar, Alfred G. Ronan, Ltd., American Consulting Services, Inc., and H. Phillip Engstrom, CPA, regarding Bluff Oaks Estates or any other property acquired by ISTHA or IDOT for use in constructing the southern extension of I-355 (from I-55 to I-80);

(b). All original bank statements, canceled checks, deposit slips, check registers, check memos, and passbooks pertaining to any checking, savings, or money market accounts maintained by, or on behalf of, Roger C. Claar, Citizens for Claar, Alfred G. Ronan, Ltd., American Consulting Services, Inc., and H. Phillip Engstrom, CPA;

(c). All invoices, customer files, billing information, contracts and any other documentation directed to, or received from, Donald F. Hedg, Continental Offices, Ltd., Roger C. Claar, Citizens for Claar, Alfred G. Ronan, Ltd., and American Consulting Services, Inc., including but not limited to those entities set forth in the summary attached hereto as Exhibit 7;

(d). All appointment books, desk calendars, and daily planners (diaries) maintained by, or on behalf of, Roger C. Claar, Citizens for Claar, Alfred G. Ronan and H. Phillip Engstrom;

(e). All telephone records, messages or diaries maintained by, or on behalf of, Roger C. Claar, Alfred G. Ronan and H. Phillip Engstrom;

(f). All computer hardware, software, discs, passwords, manuals and data, including but not limited to, any and all system units and peripheral components attached to the system, used to record any relationships and/or transactions with Roger C. Claar, Citizens for Claar, Alfred G. Ronan, Ltd., H. Phillip Engstrom, CPA, American Consulting Services, Inc., Continental Offices, Ltd., IDOT and/or ISTHA;

(g). All records, documentation, keys, and combinations to locks for any safety deposit boxes or public storage units maintained by, or on behalf of, Roger C. Claar, Citizens for Claar,

**Alfred G. Ronan, H. Phillip Engstrom, American Consulting Services, Inc., Alfred G. Ronan, Ltd., and H. Phillip Engstrom, CPA; and**

(h). **All other evidence of the offenses of Bribery, Official Misconduct, and Theft.**

3. The aforedescribed instruments, articles and things have been used in the commission of or constitute evidence of the offenses of **Bribery (720 ILCS 5/33-1); Official Misconduct (720 ILCS 5/33-3), and Theft (720 ILCS 5/16-1).**

4. Complainant has probable cause to believe, based upon the following facts, that the above listed things to be seized are now located upon the person and/or property set forth above:

**Your complainant, Sergeant Edward T. Baker, has been an Illinois State Trooper for more than 10 years and is currently assigned to the Division of Internal Investigations (DII) of the Illinois State Police (ISP). DII is responsible for investigating allegations of criminal activity involving persons employed within the Executive Branch of state government.**

**On November 1, 1995, your complainant was appointed by the Will County Grand Jury as its investigator in Case No. 95 MR 15520. Your complainant has learned the following regarding Case No. 95 MR 15520:**

***PROBABLE CAUSE***

**(1). On October 23, 1991, the Illinois Department of Transportation (IDOT) filed a condemnation suit in Will County against a 27+ acre parcel of vacant land for use in constructing the southern extension of I-355 (from I-55 to I-80). The land is commonly known as Bluff Oaks Estates (BOE) and is located in unincorporated Will County, Illinois. The property had been purchased by Continental Offices, Ltd., (COL) from Donald F. Hedg for $654,931.65 on January 18, 1991, with Hedg retaining a joint venture interest. IDOT's appraisers estimated the fair market value of BOE to be $662,600.00 as of October 23, 1991. On February 17, 1994, officials from the Illinois State Toll Highway Authority (ISTHA) "settled" the condemnation suit for**

$1,250,000.00 -- a full month before ISTHA was even questionably substituted for IDOT as plaintiff in the condemnation suit. Moreover, the settlement was not supported by any valid appraisals or valid executory contracts. IDOT was in a very strong position since it prevailed on August 6, 1992, in a traverse action filed by Hedg, and since their $662,600.00 appraisal was strongly supported by the contemporaneous purchase price of $654,931.65.

(2). Michael Martin, a respected eminent domain attorney, was appointed as a Special Assistant Attorney General to represent IDOT in its condemnation suit. According to Martin, he advised IDOT to proceed to trial with its condemnation suit at $660,000.00 since he was confident that IDOT would prevail based upon the clear evidence of value. Martin further advised IDOT that proceeding to trial would guarantee that the valuation date would be October 23, 1991 (the date IDOT filed its condemnation suit), and that IDOT should simply transfer ownership of BOE to ISTHA upon completion of the condemnation suit. Such a transfer had been the past course of conduct in similar situations.

(3). Andrew A. Bryk has been an IDOT employee for more than 22 years. On January 1, 1994, Bryk was promoted to the position of Bureau Chief of Land Acquisition for IDOT. In his letter dated February 18, 1994, Bryk instructed Martin to substitute ISTHA for IDOT as plaintiff in the condemnation suit.

(4). Frank M. Howard is the former Chief Legal Counsel to ISTHA who issued the internal memo dated February 17, 1994, informing other ISTHA officials that IDOT's condemnation suit had been settled. Robert Douglas is the former Assistant Chief Legal Counsel to ISTHA. Douglas told the ISP that on March 23, 1994, he was directed by Howard to send the memo to ISTHA's file indicating that IDOT's condemnation suit was settled at the direction of the Executive Director of ISTHA, and that it was Douglas' opinion that the settlement "is justified and represents a good faith negotiation on the part of the Authority." Douglas drafted the memo

according to Howard's direction, but refused to sign the memo because he did not believe that the settlement was "justified" or that it represented "a good faith negotiation" on the part of the of the Executive Director of ISTHA. After Douglas reviewed the file, it was his opinion that the property was worth about only $700,000.00 Instead of signing the memo, Douglas put Howard's name on it (since it reflected Howard's opinion) and forwarded it to Howard for his signature. However, the memo was never signed or initialed by Howard or any other official from ISTHA. Howard served as Chief Legal Counsel to ISTHA from November 1, 1991, to December 12, 1994, when he resigned.

(5). Robert L. Hickman is the former Executive Director of ISTHA who settled IDOT's condemnation suit for $1,250,000.00 on February 17, 1994. Hickman was appointed the Executive Director of ISTHA on February 1, 1991. However, in March of 1994, Hickman announced that he was resigning from ISTHA, effective May 1, 1994. Hickman's resignation came as a result of his participation in a "special" tollway pension fund and his personal use of ISTHA's helicopter, as well as his "steering" potential tollway contractors to Hicks Consulting which was owned by his son, Robert L. Hickman, Jr.. As a result, hundreds of thousands of dollars in needless consulting fees were paid by the potential tollway contractors to Hickman's son. That matter is currently under investigation by the U.S. Attorney's Office. Also, the State Police, in concert with the DuPage County State's Attorney's Office, began an investigation (prior to Hickman's resignation on May 1, 1994) which resulted in a nine count Bill of Indictment returned by the DuPage County Grand Jury on February 15, 1995, charging Hickman and real estate agent, Joseph Kotlarz, with conspiracy to commit theft over $100,000.00, theft over $100,000.00, and official misconduct involving the wrongful payment of a real estate commission on a tollway land purchase. That case is awaiting trial.

(6). Robert Douglas was responsible for preparing and processing the settlement

documents for IDOT's condemnation suit. Douglas told the ISP that, in most instances, it takes three to four weeks alone just to get a check from Springfield to finance the settlement. However, in this case, the entire process took only four weeks to complete. According to Douglas, Howard pressured him to expedite the processing of the settlement documents pertaining to IDOT's condemnation suit. Douglas stated that it was obvious to him that Howard wanted the settlement finalized prior to May 1, 1994 (the effective date of Hickman's resignation), since Hickman had been given authority to settle the Hedg case without Board approval. Anthony L. Osnacz, Land Acquisition Manager of IDOT, also commented to the ISP on how fast the settlement process had been completed in this case. Osnacz has been employed with IDOT for more than 27 years and is very familiar with the settlement process. He attended a pre-trial conference in 1993 where Judge Michael Lyons recommended a settlement of $800,000.00, and where Hedg demanded only $1,200,000.00 - - $50,000.00 less than the settlement arranged by Howard and Hickman. At the pre-trial, Osnacz told Michael Martin that $800,000.00 was too mu[illegible] to pay for BOE.

(7). Roger C. Claar is a current member of ISTHA's Board of Directors (BOD). Claar was appointed to the BOD by Governor Jim Edgar on June 7, 1991. Claar is also the Mayor of Bolingbrook, Illinois. Claar has held that public office since April of 1989. Claar's mayoral campaign fund is commonly known as Citizens for Claar. Claar is also the owner, president, secretary, and registered agent of American Consulting Services, Inc., (ACS) which is located at 115 Concord Lane in Bolingbrook, Illinois.

H. Phillip Engstrom is the treasurer of ACS and has been Claar's accountant for many years.

Engstrom's office is currently located at 305 West Briarcliff Road in Bolingbrook, Illinois. He no longer maintains an office at the 684 Boughton Road address. The Articles of Incorporation and all other documentation pertaining to ACS indicate that ACS's principle place of business is 115 Concord Lane in Bolingbrook, Illinois.

(8). Alfred G. Ronan, Ltd., is a "management-consulting" firm located at 225 West Washington Street, Suite 1700, in Chicago, Illinois. The firm is owned and operated by Alfred G. Ronan, a former Illinois State Representative and lobbyist. Ronan served in the General Assembly from 1979 to 1993 as the Democratic Representative of the 12th and 14th Legislative Districts and as Chairman of the Transportation and Motor Vehicles Committee.

(9). On October 23, 1991, (date condemnation suit was filed) the owners of BOE were Donald F. Hedg and Continental Offices, Ltd., (COL). Hedg retained a joint venture interest in BOE after Hedg sold the land to COL on January 18, 1991, for $654,931.65. Attorney J. Steven Santacruz represented Hedg and COL in the condemnation suit. In his letter to Ronan dated July 28, 1993, Santacruz confirmed a meeting he and Hedg had with Ronan by stating,

> It was a pleasure meeting with you, Julie Starsiak and Mayor Roger Claar of Bolingbrook in regard to the matter of our property located in Will County that is being condemned by the Illinois Department of Transportation for purposes of extending FAP Route 431 (known as Illinois Highway 355). (emphasis added).

On January 4, 1996, Santacruz was interviewed by the ISP at his office in Rolling Meadows, Illinois. During that interview, Santacruz confirmed that Claar was present during the entire first meeting with Ronan and Hedg -- the meeting where Hedg and Santacruz sought Ronan's help in reaching a settlement with IDOT regarding BOE. A second meeting between Santacruz, Hedg and Ronan occurred during the week preceding August 10, 1993. Thereafter, Hedg and COL entered a consulting agreement with Ronan dated August 10, 1993, whereby Ronan agreed to "negotiate with officials of IDOT, the Illinois Tollway Authority and the Illinois Attorney General's office in order to reach an out-of-court settlement satisfactory to COL and Hedg."

Pursuant to the terms of that agreement, and based upon the $1,250,000.00 settlement, Ronan received a total fee of $23,750.00 for his consulting services. He deposited a $10,000.00 retainer on August 19, 1993. According to Santacruz, Hedg and COL hired Ronan because he was a "high powered attorney," and because he was a man who "could get into doors that they could not." When questioned about how Hedg met Ronan, Santacruz stated, "I probably shouldn't tell you this, but I think Roger Claar introduced Hedg to Al Ronan."

(10). When asked to describe what actions Ronan took between August 10, 1993, and March 23, 1994, to reach the $1,250,000.00 settlement with ISTHA, Santacruz stated that he did not have any knowledge of what Ronan did or who he contacted. Santacruz also stated that he did not receive any correspondence or other documentation from Ronan between August 10, 1993, and March 23, 1994. When asked how he could effectively represent Hedg and COL without such correspondence or documentation, Santacruz stated that there was "a fork in the road" and that "anything Al Ronan did, I don't know about." He also stated that, "We are clean, but anything after that fork -- I had no dealings with ISTHA." When Santacruz was asked why Hedg felt he needed counsel present during his (Hedg's) interviews with the ISP, Santacruz stated that Hedg told him he was very concerned and nervous about how his relationship with Claar, an ISTHA Board Member, would look as the case was investigated.

(11). When asked by the ISP, Hedg initially denied that Claar was present during his first meeting with Ronan and that Claar had introduced him to Ronan. Hedg stated he met Ronan at "some political golf outing," the specifics of which he could not remember. However, Hedg later admitted that Claar drove him to the first meeting with Ronan, introduced him to Ronan, left, and then returned to drive him home. Santacruz stated that Claar did not leave and that Claar was present during the entire first meeting with Ronan.

(12). On April 12, 1991, IDOT informed Hedg of the formal re-alignment of the southern

extension of I-355 and that the center line of the re-alignment would cut through the middle of BOE. On May 8, 1991, Hedg filed his application for annexation of BOE with the Village of Lemont, Illinois -- while at or about the same time, withdrawing a similar application previously filed with the Village of Woodridge. Hedg told the ISP that Claar introduced him to Joseph Forzley, Mayor of Lemont, prior to May 8, 1991. On June 11, 1991, Hedg made a $1,000.00 contribution to Citizens for Claar (Claar's mayoral campaign fund). On July 9, 1991, IDOT informed the Village of Lemont of its intent to purchase BOE for use in constructing the southern extension of I-355. On July 17, 1991, IDOT confirmed to Hedg that it intended to purchase BOE. Yet, on September 9, 1991, the Village of Lemont passed an ordinance approving Hedg's application for annexation and his preliminary plat, even though the Village was well aware of IDOT's intent to condemn BOE.

(a). Hedg stated to the ISP that he knew Claar was on the ISTHA Board of Directors and denied ever discussing BOE with Claar. However, Hedg later conceded that Clair was familiar with the BOE situation.

(b). When asked by the ISP about his contributions to Claar's campaign fund, Hedg stated that when he does business in a town, he will contribute to the mayor's campaign fund, "... not much though, if its $100.00 or $200.00 it would be a lot." On June 11, 1991, shortly after Claar introduced him to Lemont Mayor Joseph Forzley, Hedg contributed $1,000.00 to Citizens for Claar (Claar's Bolingbrook mayoral campaign fund). To date, Hedg has contributed at least $2,750.00 to Citizens for Claar. When confronted by the ISP with that inconsistency, Hedg threw up his hands and stated he had another campaign check for Claar in his briefcase which he intended to deliver to Claar on the following day. Shortly thereafter, Hedg stated that he was "getting tired" of being questioned about his relationship with Claar and that "after today" he would not answer any more questions about Claar.

(13). On December 8, 1995, Hedg was interviewed by the ISP at his office in Naperville, Illinois. Following that interview, Special Agents of the ISP Division of Criminal Investigations conducted a surveillance of Hedg. According to the Special Agents, Hedg left his office shortly after the interview and walked across the parking lot to The Family Restaurant where he used a public telephone located inside the foyer of the restaurant. However, a Special Agent was able to overhear portions of Hedg's telephone conversation. According to that Special Agent, Hedg stated, "They're going to take it to the Grand Jury" and, "I just talked to my attorney." During the interview of December 8, 1995, the ISP informed Hedg for the first time that the case was going to the Grand Jury. On May 30, 1996, Hedg was interviewed by the ISP at Santacruz's office. During that interview, Hedg admitted that he used the public telephone to call Claar or Ronan. When asked why he did not use the private telephone in his office, Hedg stated that <u>Ronan would not accept his telephone calls unless they were made from a public telephone.</u>

(14). On September 30, 1993, ISTHA's Board of Directors passed Resolution No. 13901 which empowered Hickman and Howard to negotiate and "settle" land acquisitions regarding the southern extension of I-355 without approval of the Board of Directors. The minutes of that Board meeting indicate that Claar voted in favor of passing that resolution – even though he knew that the resolution directly involved Hedg's BOE. Arthur W. Philip, a member of ISTHA's Board of Directors, requested that the resolution be tabled until additional information could be acquired. Philip stated that the resolution was "premature". On several occasions, Jack Garrow, Chairman of the Board, questioned whether there was "an urgency" to pass the resolution. Howard "encouraged" the Board to "act on this today." Hickman then added, "You could (delay the vote), but it's not smart. I don't think – I just think that it's bad business." Howard then called for a vote. William Dugan, an ISTHA Board member, made the motion to pass Resolution No. 13901. The motion was seconded by Claar. The resolution passed. Claar voted in favor of

passing the resolution. As a result, Hickman and Howard were essentially given autonomous power to settle IDOT's condemnation suit regarding BOE.

(15). John Friedrich was employed by IDOT for more than 39 years. On December 31, 1993, Friedrich retired from his position as IDOT's Bureau Chief of Land Acquisitions. He was replaced by Andrew A. Bryk. Friedrich told the ISP that IDOT and ISTHA had ongoing meetings regarding the I-355 southern extension land acquisitions. The agencies met on three or four occasions. During those meetings and the meeting on September 2, 1993, IDOT and ISTHA agreed that <u>any properties that were in the condemnation stage would continue to be acquired by IDOT</u>, any in the appraisal stage would be acquired by ISTHA, and any in the negotiation stage would be worked out between IDOT and ISTHA. This was in keeping with past practices. Also, it was irresponsible to substitute plaintiffs in a condemnation suit since the fair market value of the land is fixed as of the date the condemnation suit is filed. Friedrich, in his 39 years on the job, was not aware of any other occasion where IDOT was in the condemnation stage and then turned the land acquisition over to another agency. At that time, there were only two properties under condemnation by IDOT, one of which was BOE. The other was an inconsequential property having a value of less than $20,000.00. Howard attended the meeting held on September 2, 1993. Wally Kos, Chief of the Bureau of Programming for IDOT, also attended the meeting on September 2, 1993. Kos told the ISP that an agreement was reached whereby IDOT would retain control over properties under condemnation.

(16). Robert Douglas told the ISP that following the passage of Resolution No. 13901 on September 30, 1993, Howard directed him to meet with IDOT personnel and to obtain any condemnation files regarding the I-355 southern extension -- even though Howard was well aware that an agreement had been reached on September 2, 1993, between IDOT and ISTHA, whereby IDOT was to retain control over all pending condemnation suits. In December of 1993, Howard

and Douglas met with IDOT officials and acquired two condemnation files, one of which was BOE. Anthony L. Osnacz, Land Acquisition Manager for IDOT, told the ISP that the ultimate decision to turn the condemnation files over to ISTHA was made by Hickman and Kirk Brown, Secretary of IDOT.

(17). Brown admitted to the ISP that Ronan contacted him on behalf of Hedg and suggested that ISTHA take over the acquisition of BOE since the land would be used for the extension of I-355. Brown also admitted that Greg Baise, former Secretary of IDOT, also contacted him on Hedg's behalf regarding BOE. In an ISP interview with Baise, Baise admitted having several conversations with Hedg regarding BOE. He also admitted calling Brown on Hedg's behalf. However, when Hedg was asked by the ISP about his conversations with Baise, Hedg responded, "Who the hell is he?"

(18). After acquiring control of IDOT's condemnation suit, Howard called Hedg and requested a meeting. Hedg attended that meeting with Ronan, but could not recall where the meeting took place. According to Hedg, Howard stated that he "wanted to settle the deal" and that Hedg needed to obtain another appraisal on BOE.

(19).

in BOE.

(22). Froberg stated that the Spohn Construction contract was a fraud and that he never entered such a contract. Froberg stated that had he entered into such a "lucrative" contract, he would never have sold his interest in BOE to Hedg for *only* $25,000.00.

(a). Froberg stated that Spohn Construction consists of "an old guy (Melvin Spohn), a pick-up truck, cellular phone, and a clipboard," and that he was financially incapable of complying with the terms of the contract. Yet, as earnest money for the real estate contract, Spohn issued a $100,000.00 promissory note.

(b). According to Froberg, Hedg had a history of entering into real estate contracts (like the contract with Spohn) at inflated prices in order to establish fair market values for land Hedg was developing. Hedg used such contracts to obtain bank financing. The inflated sales prices enabled Hedg to borrow more money than he would have been qualified to borrow based upon the true value of the land.

(23). According to Froberg, Hedg discussed the settlement of IDOT's condemnation suit with several subcontractors that he and Froberg do business with on a regular basis. During those discussions, Hedg bragged about how smart he was since "he had found somebody to solve his problems and make it very profitable for him." Hedg also stated that, "It was very expensive, but it was very quick and made me a rich man," and that he used "an attorney, or somebody with grind in the Tollway" to solve his problems. Froberg also stated that he recently learned that Claar hired Hedg as a "golf consultant" for the Village of Bolingbrook. However, according to Froberg, Hedg has no experience in building golf courses.

(24).

(25).

(26). Board members of ISTHA are required by law to file a Statement of Economic Interest with the Illinois Board of Ethics on an annual basis. Item number 8 states, "In the space provided, indicate whether you, your spouse or any member of your immediate family living with you owns any property, receives any income or has any economic interest or association which creates or could give rise to a conflict of interest." Claar answered that inquiry "None" for his statements filed for 1994, 1995, and 1996.

(27). Claar's direct involvement with Hedg and Ronan in the BOE condemnation as described in this complaint, , his campaign contributions from Ronan, and his campaign contributions from Hedg should have been disclosed. Obviously, this required disclosure would have triggered proceedings for his dismissal from ISTHA's BOD as well as a criminal investigation similar to the one here. Claar has also received substantial campaign contributions from numerous companies who do business with ISTHA. Full disclosure of that fact under item number 8 was required, as well.

Based upon your complainant's investigation to date, the sole place of business for the consulting activities of American Consulting Services, Inc., is 115 Concord Lane in Bolingbrook,

Illinois. The most recent documentation filed by American Consulting Services, Inc., with the Illinois Secretary of State's Office contains the 115 Concord address.

Based upon your complainant's investigation to date, the only business location for H. Phillip Engstrom, CPA, is the 305 West Briarcliff Road address. Additionally, the most current address for Citizens for Claar is also the 305 West Briarcliff address. Based on your complainant's investigation to date, the only known place of business for Alfred G. Ronan, Ltd., is at 225 West Washington Street, Suite 1700, in Chicago, Illinois.

Based upon the facts described above, your complainant believes that officials from IDOT and ISTHA committed the offenses of Bribery, Official Misconduct and Theft in that they received a financial gain or a personal advantage for themselves or for others in exchange for their decision to substitute plaintiffs in IDOT's condemnation suit, and for their participation in settling the condemnation suit. Based upon the facts described above, your complainant believes that Alfred G. Ronan, Donald F. Hedg, Continental Offices, Ltd., and H. Phillip Engstrom are legally accountable for the criminal activity engaged in by said IDOT and ISTHA officials.

Your complainant believes that the items to be searched and seized, as described above, will provide evidence of the Bribery, Official Misconduct, and Theft committed by said IDOT and ISTHA officials, *and* by Donald F. Hedg, Alfred G. Ronan, Continental Offices, Ltd., and H. Phillip Engstrom. Your complainant also believes that such recordings and documents will be lost, destroyed or otherwise made unavailable if requested by way of a grand jury subpoena.

WHEREFORE, based on the forgoing, your complainant believes that probable cause exists for the issuance of a search warrant for the premises of American Consulting Services, Inc.,

**Alfred G. Ronan, Ltd., Citizens for Claar and H. Phillip Engstrom, CPA, for the purpose of searching and seizing those recordings and documents described above in this Complaint for Search Warrant, and any other evidence of the offenses of Bribery, Official Misconduct and Theft.**

SGT. Edward T. Baker #3577
APPLICANT

Subscribed and sworn to before me this 14th day of August 1996, at 8:45A.M.

CIRCUIT JUDGE

**OFFICE OF THE MINORITY LEADER**
ILLINOIS SENATE

JAMES "PATE" PHILIP
REPUBLICAN LEADER

DISTRICT OFFICE
970 N. Oaklawn Avenue
Suite 120
Elmhurst, IL 60126
312-941-0094

13 September 1990

Mr. James C. Slifer
District Engineer
ILLINOIS DEPARTMENT OF TRANSPORTATION
201 West Center Court
Schaumburg, Illinois 60196-1096

Dear Jim:

Attached please find letter from my good friend, Clifford Carney, regarding a piece of property in Will County. Evidentally, he is out of touch with who is the Director of the Illinois Department of Transportation.

Anything you can do to regarding his request would be appreciated.

Sincerely,

James 'Pate' Philip
Senate Minority Leader

JPP:pdk
Attachment

IT/SC
3-01200

Exhibit F

CARNEY & HULTQUIST, CHARTERED
ATTORNEYS & COUNSELORS
4915-13 MAIN STREET
P.O. BOX 578
DOWNERS GROVE, ILLINOIS 60515
TELEPHONE 708/969-2300
FAX 708/969-1342

ROBERT C. HULTQUIST
MICHAEL C. WIEDEL
RICHARD F. HUDZIK
JAMES F. RUSS, JR.

WILLIAM M. CHRISTOU

OF COUNSEL:
CLIFFORD M. CA

September 7, 1990

Mr. Gregory Baise
Illinois Department of Transportation
2300 South Dirksen Parkway
Springfield, Illinois 62764

Dear Mr. Baise:

It is my understanding that the Illinois Department of Transportation owns a strip of land 300 feet wide in Will County, Illinois immediately west of the Cook County line that has been acquired for the potential extension of the North-South expressway. I have been further advised that the Illinois Department of Transportation is now considering acquiring a new right-of-way approximately 1/2 mile west of this current parcel of land. This property is located in the east half of the northeast quarter of Section 24, Township 38 north, Range 10, East of the Third Principal Meridian in Will County and I represent a party who is in the process of having a subdivision reviewed by the County authorities of Will County immediately west of your 300 foot right-of-way. My client has requested that I contact your offices to determine whether or not your plans do contemplate moving the right-of-way to an area further west and if so, what procedures would be entailed for the possible acquisition of this 300 foot right-of-way by my client so that it could be incorporated into his proposed Bluff Road Estates Subdivision currently pending before the corporate authorities of Will County, Illinois. The property in question would be located at the northwest corner of Bluff Road and the Will-Cook County line.

I would appreciate it if you would have someone in your office contact me relative to this matter if there is any truth to the information I have relative to the moving of your proposed right-of-way further west than was previously contemplated.

Very truly yours,

IT/SC
3-01202

Clifford M. Carney

CMC:hla

Exhibit G

CARNEY & HULTQUIST, CHARTERED
ATTORNEYS & COUNSELORS
4915-13 MAIN STREET
P.O. BOX 578
DOWNERS GROVE, ILLINOIS 60515
TELEPHONE 708/969-2300
FAX 708/969-1342

ROBERT C. HULTQUIST
MICHAEL C. WIEDEL
RICHARD F. HUDZIK
JAMES F. RUSS, JR.

WILLIAM M. CHRISTOU

OF COUNSEL:
CLIFFORD M. CARNE

September 7, 1990

Senator James Pate Philip
970 North Oaklawn
Suite 120
Elmhurst, Illinois 60126

Dear Pate:

I am enclosing herewith a copy of a letter that I have sent to Greg Baise at the Illinois Department of Transportation regarding some property currently owned by the Illinois Department of Transportation. Our mutual friend Don Hedg is developing a subdivision immediately to the west of this tract land and would be interested in acquiring the 300 foot right-of-way from the Department of Transportation if it is true that they are planning to move their right-of-way further west. If you can be of any assistance in getting information for me relative to this so that I could follow through on it, I would appreciate it.

Very truly yours,

Clifford M. Carney

Clifford M. Carney

CMC:hla
Enclosure

IT/SC
3-01201

Exhibit H

JS 44
(Rev. 12/96)

CAT 3

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

JOHN P. WALLISER

JUDGE ANDERSEN

MAGISTRATE JUDGE ROSEMOND

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF WILL COUNTY
(EXCEPT IN U.S. PLAINTIFF CASES)

00C 5679

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JOHN P. WALLISER PRO SE

DOCKETED
SEP 19 2000

**DEFENDANTS** RODNEY SLATER, Secretary of US. DEPT. OF TRANSPORTATION, KIRK BROWN SEC. OF THE ILLINOIS DEPT OF TRANSPORTATION, THOMAS CUCULICH, CHAIRMAN ILLINOIS STATE TOLL HIGHWAY AUTHORITY, JAMES RYAN ATTORNEY GENERAL OF ILLINOIS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT WASHINGTON D.C.
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

ATTORNEYS (IF KNOWN) US ATTORNEY & ATTORNEY GENERAL OF ILLINOIS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** *(PLACE AN "X" IN ONE BOX ONLY)*

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury – Med. Malpractice
☐ 365 Personal Injury – Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS – Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☒ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) 42 USC 4630
28 USC 1332, 42 USC 108, 11 USC 523, FOURTEENTH AMENDMENT

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number ________, previously dismissed by Judge ________

DATE 9/15/00

SIGNATURE OF ATTORNEY OF RECORD JPW

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of JOHN P. WALLISER, PLAINTIFF
V.
RODNEY SLATER, SEC. US DEPT OF TRANSPORTATION,
KIRK BROWN, SEC ILL DEPT OF TRANSPORTATION,
THOMAS CUCUNICH, CHAIRMAN ILLINOIS STATE
TOLL HIGHWAY AUTHORITY

JUDGE ANDERSEN
MAGISTRATE JUDGE ROSEMOND

Case Number: 00C 5679

FILED-ED4
00 SEP 15 PM 12:03
CLERK
DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

JOHN P. WALLISER PRO SE

DOCKETED
SEP 19 2000

| (A) | |
|---|---|
| SIGNATURE | [signature] |
| NAME | JOHN P. WALLISER |
| FIRM | PRO SE |
| STREET ADDRESS | 16647 APACHE DRIVE |
| CITY/STATE/ZIP | LOCKPORT IL 60441 |
| TELEPHONE NUMBER | 708-268-2354 |
| FAX NUMBER | |
| E-MAIL ADDRESS | JPAEON23@AOL.COM |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☒ |
| TRIAL ATTORNEY? | YES ☐ NO ☒ |

| (B) | |
|---|---|
| SIGNATURE | |
| NAME | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| TELEPHONE NUMBER | |
| FAX NUMBER | |
| E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☐ |
| TRIAL ATTORNEY? | YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |

| (C) | |
|---|---|
| SIGNATURE | |
| NAME | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| TELEPHONE NUMBER | |
| FAX NUMBER | |
| E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☐ |
| TRIAL ATTORNEY? | YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |

| (D) | |
|---|---|
| SIGNATURE | |
| NAME | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| TELEPHONE NUMBER | |
| FAX NUMBER | |
| E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☐ |
| TRIAL ATTORNEY? | YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |